# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 11-1179

KELLIANNE KELLY-WILLIAMS, INDIV., ETC.

VERSUS

AT&T MOBILITY, LLC, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 231,347
HONORABLE DONALD THADDEUS JOHNSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and J. David Painter, Judges.

**AFFIRMED.**

**Roy Clifton Cheatwood**
**Baker, Donelson, Bearman**
**201 St. Charles Ave., #3600**
**New Orleans, LA 70170**
**(504) 566-5200**
**COUNSEL FOR DEFENDANT APPELLEE:**
    **AT&T Mobility Services, LLC**
    **Chris Benning**
    **AT&T Mobility, LLC**

**Richard Jerald Dodson**
**Dodson Hooks & Frederick**
**445 N. Blvd., #850**
**Baton Rouge, LA 70802**
**(225) 756-0222**
**COUNSEL FOR PLAINTIFF APPELLANT:**
     **Kellianne Kelly-Williams**

**John Barney Davis, II**
**Attorney at Law**
**450 Laurel Street, 20th Floor**
**Baton Rouge, LA 70801-2000**
**(225) 381-7000**
**COUNSEL FOR DEFENDANT APPELLEE:**
     **AT&T Mobility, LLC**
     **Chris Benning**
     **AT&T Mobility Services, LLC**

**Brent Paul Frederick**
**Dodson, Hooks & Frederick**
**445 N. Blvd., #850**
**Baton Rouge, LA 70802**
**(225) 756-0222**
**COUNSEL FOR PLAINTIFF APPELLANT:**
     **Kellianne Kelly-Williams**

**Adam Bennett Zuckerman**
**Baker Donelson Bearman**
**201 St. Charles Ave., Ste 3600**
**New Orleans, LA 70170**
**(504) 566-5200**
**COUNSEL FOR DEFENDANT APPELLEE:**
     **AT&T Mobility Services, LLC**
     **Chris Benning**
     **AT&T Mobility, LLC**

**Michael T. Beckers**
**Dodson, Hooks & Frederick**
**445 N. Blvd., #850**
**Baton Rouge, LA 70802**
**(225) 756-0222**
**COUNSEL FOR PLAINTIFF APPELLANT:**
     **Kellianne Kelly-Williams**

**Elisabeth Quinn Prescott**
**Attorney at Law**
**450 Laurel St., 20th Floor**
**Baton Rouge, LA 70801**
**(225) 381-7000**
**COUNSEL FOR DEFENDANT APPELLEE:**
     **AT&T Mobility, LLC**
     **AT&T Mobility Services, LLC**
     **Chris Benning**

**John Michael Fitzpatrick**
**Wheeler, Trigg, O'Donnell, LLP**
**1801 California St., Ste 3600**
**Denver, CO 80202**
**(303) 244-1874**
**COUNSEL FOR DEFENDANT APPELLEE:**
    **AT&T Mobility, LLC**
    **AT&T Mobility Services, LLC**
    **Chris Benning**

**Johnathan Fitzgerald**
**Wheeler, Trigg, O'Donnell, LLP**
**1801 California St., Ste 3600**
**Denver, CO 80202**
**(303) 244-1874**
**COUNSEL FOR DEFENDANT APPELLEE:**
    **AT&T Mobility Services, LLC**
    **AT&T Mobility, LLC**
    **Chris Benning**

**Edwin J. Kilpela, Jr.**
**Wheeler, Trigg, O'Donnell, LLP**
**1801 California St., Ste 3600**
**Denver, CO 80202**
**(303) 244-1874**
**COUNSEL FOR DEFENDANT APPELLEE:**
    **AT&T Mobility Services, LLC**
    **AT&T Mobility, LLC**
    **Chris Benning**

**SAUNDERS, J.**

In this personal injury case, a young child was struck by a falling advertisement sign inside an AT&T store in Alexandria, Louisiana after playing under and around the sign. After a jury trial, AT&T was found free of liability. The plaintiff appeals decisions of the trial court involving whether the law included in jury interrogatories and jury instructions was proper. For the reasons discussed herein, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Johnathan Davis (hereinafter "Johnathan"), a boy of two years and eight months, experienced an accident at an AT&T store in Alexandria, Louisiana while his mother, Kellianne Kelly-Williams (hereinafter "Williams"), was shopping. That evening, on March 21, 2008, while his mother shopped, Johnathan played in various parts of the store, eventually arriving at a part of the store where an inverted "V" plastic floor sign had been placed. Johnathan then played under and around the sign. In doing so, he pushed the sign against a window, causing the sign to fold up. Johnathan then dropped something on the floor. As he bent down to pick it up, the sign fell towards him, striking his head and causing him to fall down. He landed with his arms outstretched, which prevented his head from hitting the ground.

The next day, Johnathan experienced two seizures, which, according to Williams, have continued since the accident. Although the experts' opinions differed at trial, Johnathan's doctors have stated that he suffers from post-traumatic epilepsy and from serious cognitive issues.

Shortly after the accident, Williams filed suit on behalf of Johnathan, and sought damages due to the alleged negligence of AT&T, in that, *inter alia*, AT&T and its employees had placed the sign in an area of high customer traffic and in an

unsecured manner, thereby creating a hazardous condition. After a trial, the jury returned a verdict in favor of AT&T. Williams now appeals, asserting four assignments of error.

**ASSIGNMENTS OF ERROR**

1. The trial court committed reversible error by failing to include any interrogatory on the jury verdict form regarding general negligence. This case involves specific allegations of negligence on part of AT&T's employees, and Louisiana law is clear that the general principles of negligence and not those articulated in La.R.S.9:2800.6 regarding merchant liability are applicable here.

2. The trial court committed reversible error by failing to include any interrogatory on the jury verdict form concerning the negligence of a named party, Chris Benning, AT&T's manager.

3. The trial court committed reversible error by setting forth a much higher burden of proof for plaintiff to meet in order to prevail against AT&T, compared to the burden of proof AT&T had to meet to show that plaintiffs were comparatively negligent; although the same burden was applicable to both parties.

4. The trial court committed reversible error by failing to include in its jury charges an instruction regarding the causation presumption contained in *Houseley v. Cerise*, 579 So.2d 973 (La.1991).

**LAW AND ANALYSIS**

In her first assignment of error, Williams contends that the trial court erred by failing to include on the verdict form a jury interrogatory on the law of general

negligence, as opposed to language from the Louisiana Merchant Liability Act, or La.R.S. 9:2800.6.[1] We find no merit in this contention.

The issue before us is whether the trial court was mandated to include general negligence principles on the verdict form. The court in *Citgo Petroleum Corp. v. Yeargin, Inc.* explains the governing principles:

> This issue is governed by La.Code Civ.P. art. 1812. Within the guidelines of this article, the trial court is vested with broad discretion in determining whether to submit special interrogatories to the jury. *Black v. Prudential Prop. & Cas. Ins. Co.*, 93–878 (La.App. 3 Cir. 3/2/94), 634 So.2d 1340. It also has wide discretion in the framing of the questions to be posed to the jury. *Bell v. Vickers*, 568 So.2d 160 (La.App. 2 Cir.1990). Absent a showing of abuse of that discretion, an appellate court may not set aside such determinations. *Tramontin v. Glass*, 95–774 (La.App. 5 Cir. 1/30/96), 668 So.2d 1252.

*Citgo Petroleum Corp. v. Yeargin, Inc.*, 95-1574, p. 31 (La.App. 3 Cir. 2/19/97), 690 So. 2d 154, 172-73, *writs denied*, 97-1223 and 97-1245 (La. 9/19/97), 701 So.2d 169 and 170.

---

[1]A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695. La.R.S. 9:2800.6.

The court in *Davenport v. Albertson's, Inc.* states the relevant inquiries pursuant to the Louisiana Merchant Liability Act:

> To maintain a slip and fall action, [plaintiff] has the burden of proving the usual requirements for a negligence action (duty, breach, cause in fact, & damages) plus those found in La.R.S. 9:2800.6, including that:
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable, and
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence, and
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

*Davenport v. Albertson's, Inc.*, 00-685, p. 342 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, 342 *writ denied*, 788 So.2d 427 (La. 2001).

The court in *Frelow v. St. Paul fire and Marine Ins.* expounds on the applicability of general negligence principles and the Louisiana Merchant Liability Act: "When a trip and fall accident is allegedly the result of a specific act of an employee and not solely the result of a condition found on the premises, the principles of negligence are applicable." *Frelow v. St. Paul Fire & Marine Ins. Co.*, 93-979, p. 5 (La.App. 3 Cir. 2/2/94), 631 So. 2d 632, 635 (citing *Crooks v. Nat'l Union Fire Ins. Co.*, 620 So.2d 421 (La.App. 3 Cir.), writs denied, 629 So.2d 391 and 392 (La. 1993)).

At trial, the verdict form read in part: "Do you find that Plaintiff proved by a preponderance of the evidence that an unreasonably dangerous condition caused or contributed to the accident of March 21, 2008?" It is clear that this interrogatory pertains to the first element of La.R.S. 9:2800.6 as explained above in *Davenport*. Williams, however, asserts that general negligence rules should have been included on the jury form, so that the jury potentially could have found AT&T liable under either general negligence law, the Louisiana Merchant Liability

4

law, or both. Williams objected, her brief explains, to her case becoming exclusively a premises liability case due to the limited scope of the verdict form.

However, we do not agree with Williams's contention. The trial court was not mandated to include general negligence law on the verdict form, because Williams is unable to point to any negligence on part of AT&T or its employees as support of her assertion. In her brief, Williams compares her case to *Crooks v. Nat'l Union Fire Ins. Co.*, 620 So.2d 421 to further her argument that the direct conduct of AT&T employees constituted negligence. *Crooks*, however, is distinguishable. The employee in *Crooks* pulled a vacuum cleaner hose across an aisle, causing the plaintiff to trip and suffer injury. *Id.* Indeed, Williams offers no evidence to suggest that any analogous action action on the part of AT&T employees caused the sign to fall.

Moreover, the conduct of AT&T which Williams references in support of her argument fail to form the basis of a finding of negligence. First, Williams points to the fact that the employees failed to ballast the sign with sand, as instructions on the sign directed. Testifying on this issue, the manufacturer of the sign stated that this precaution was necessary only in windy conditions. If the absence of sand did cause the sign to be unreasonably dangerous, then the issue was covered by the verdict form. If however, the absence of sand did not cause the sign to be unreasonably dangerous, then the failure to add sand cannot be said to constitute negligence. Accordingly, the verdict form clearly covered this issue.

As another example of alleged negligence, Williams argues that the placement of the sign in the corner of the store was dangerous, in that it would "only fall into the store if disturbed." As is the case with the absence of ballast sand in the discussion above, if the placement of the sign did cause the sign to be unreasonably dangerous, then the issue was included in the verdict form. If,

5

however, the placement of the sign did not cause the sign to be unreasonably dangerous, then it could not be said that this conduct was negligent.

Williams also points to the fact that no employee intervened in order to prevent the sign from falling on Johnathan. The evidence, though, shows that none of the employees present saw the sign falling on Johnathan. Nothing in the record suggests that any employee was in a position to help Johnathan once the sign began to fall. In the absence of any evidence suggesting negligence on the part of any employee, it cannot be said that the trial court erred in failing to include general negligence in the jury form.

Due to lack of any evidence which could form the basis of a finding of fact of negligent conduct by AT&T's employees, we find that the trial court did not abuse its discretion in its selection of jury interrogatories.

In her second assignment of error, Williams argues that the trial court erred by failing to include any interrogatory on the jury verdict form concerning the negligence of a named party, Chris Benning, AT&T's manager. However, Williams puts forth no evidence of negligent conduct by Chris Benning. Williams does contend that negligence of Benning's subordinates should be attributed to Benning. The record suggests that the jury was justified in finding that the accident was neither caused nor contributed to by an unreasonably dangerous condition. The various allegations of negligence all presuppose a dangerous condition from which Johnathan should have been protected. In the absence of allegations or proof suggesting negligence related to the failing sign, the trial court was not mandated to include such an interrogatory. Therefore, we find no abuse of discretion in the trial court's exclusion of the negligence of Chris Benning on the jury form.

In the third assignment of error, Williams asserts that the trial court erred in that the jury verdict form impermissibly allowed for the jury to apply different standards to Williams and to AT&T in its apportionment of fault. In its decision-making, the jury did not reach the issue of apportionment of fault. The jury's initial finding that Johnathan's accident was not caused by an unreasonably dangerous condition cleared AT&T of liability. After the first interrogatory, the jury did not answer the remaining questions on the jury form. The jury, then, did not reach the issue of apportionment of fault. Thus, whether the interrogatories contained proper guidelines of comparative fault is irrelevant. Accordingly, we find that this issue is moot.

In her last assignment of error, Williams contends that the trial court erred by failing to include in its jury charges an instruction regarding the causation presumption contained in *Houseley v. Cerise*, 579 So.2d 973 (La.1991):

> [a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
>
> Id. at 596. *See also*, *Simpson v. Caddo Parish School Board*, 540 So.2d 997 (La.App. 2 Cir. 1989); *Petersen v. State Farm Auto Insurance Company*, 543 So.2d 109 (La.App. 3 Cir. 1989); *Wisner v. Illinois Central Gulf Railroad*, 537 So.2d 740 (La.App. 1 Cir. 1988).

*Houseley v. Cerise*, 579 So.2d 973, 980 (La.1991), (quoting *Lukas v. Insurance Company of North America*, 342 So.2d 591 (La.1977)).

In order to merit the inclusion of the *Houseley* presumption in the jury instruction, the plaintiff must prove by a preponderance of the evidence all three elements of the presumption. *Juneau v. Strawmyer*, 94-903 (La.App. 4 Cir. 12/15/94), 647 So.2d 1294. What is more, "[t]he question of whether [the plaintiff]

7

was entitled to have this instruction on causation presented to the jury is a question of fact that cannot be disturbed on appeal absent a finding of manifest error." *Venissat v. St. Paul Fire & Marine Ins. Co.*, 06-987 p. 8 (La.App. 3 Cir. 8/15/07), 968 So.2d 1063, 1070 (citations omitted).

As in the discussion of the third assignment of error, we note that the jury did not reach the issue of causation after it made the initial finding that the accident was not caused by an unreasonably dangerous condition. It follows that the issue of whether Johnanthan's alleged injuries bore a causal relation to the accident is rendered immaterial. Therefore, we find that the issue of whether the trial court erred by declining to include the *Houseley* presumption in the jury instructions is moot.

## CONCLUSION

We affirm the decision of the trial court to exclude general negligence law and Chris Benning's negligence from the jury verdict form, because Williams failed to provide evidentiary support of negligence on part of AT&T and its employees. Discussion of the remainder of assignments of error are pretermitted for the reasons discussed herein. All costs are assessed to Kerianne Kelly-Williams.

**AFFIRMED.**