NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-193

AMANDA BERTRAND

VERSUS

PROGRESSIVE SECURITY INSURANCE COMPANY

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2014-2898
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Elizabeth A. Pickett, Judges.

AFFIRMED.

John E. Jackson
Jackson Law Firm
Post Office Box 1239
Lake Charles, LA 70602-1239
(337) 433-8866
COUNSEL FOR PLAINTIFF APPELLEE:
    Amanda Bertrand

**David A. Strauss**
**Matthew D. Fraser**
**King & Jurgens, LLC**
**201 St. Charles Avenue, Suite 4500**
**New Orleans, Louisiana 70170**
**(504) 582-1233**
**COUNSEL FOR DEFENDANT-APPELLANT**
    **Progressive Security Insurance Company**

**Pickett, J.**

The plaintiff in this personal injury matter appeals the trial court's denial of her claim for penalties and attorney fees that she filed against her underinsured/uninsured motorist (UM) insurer for its alleged failure to timely pay her demand for the limits of her automobile insurance policy's UM coverage.

## FACTS

On March 19, 2012, Amanda Bertrand was injured when her vehicle was rear ended by a vehicle driven by Phillis Shelton. Ms. Shelton's liability insurance policy with Farm Bureau Insurance Company provided her $15,000.00 in liability coverage. In early 2013, Farm Bureau tendered its policy limits. By letter dated March 12, 2013, Ms. Bertrand notified her UM insurer, Progressive Security Insurance Company, of her accident and that Farm Bureau's $15,000.00 liability coverage was insufficient to fully compensate her for her injuries. She demanded payment of Progressive's $15,000.00 UM policy limits. Progressive received the letter March 13, 2013.

On April 8, 2013, Progressive notified Ms. Bertrand's attorney that an office note dated October 31, 2012, prepared by Ms. Bertrand's treating orthopedist was missing from the supporting documentation identified in her demand letter. That same day, after receiving and reviewing the office note, Progressive issued payment to Ms. Bertrand of its $15,000.00 UM policy limits and notified her counsel that payment had been issued. On April 19, 2013, Ms. Bertrand's counsel notified Progressive that payment had not been received. After attempting to contact counsel, on April 23, 2013, Progressive stopped payment of its April 8 payment and re-issued payment to Ms. Bertrand.

Ms. Bertrand's counsel notified Progressive on April 29, 2013, that the notations "In Payment Of: FULL/FINAL RELEASE OF UMBI CLAIM ARISING

FROM MVA 3/10/12" and "Payment Type: FINAL PAYMENT" printed on the $15,000.00 check and the release document included with the check rendered the payment a conditional tender, not an unconditional tender required by *McDill v. Utica Mutual Insurance Co.*, 475 So.2d 1085 (La.1985). In his correspondence, counsel directed Progressive to notify him within forty-eight hours that the payment was unconditional. Progressive claims that it did so.

Ms. Bertrand negotiated Progressive's check on January 5, 2014. Then, in July 2014, she filed suit against Progressive, alleging that it is liable to her for penalties, attorney fees, and costs because it failed to issue an unconditional tender of its UM policy limits within thirty days of having received satisfactory proof of loss of her claim. After filing an answer, Progressive filed a motion for summary judgment; Ms. Bertrand then filed a motion for summary judgment. After hearing the motions, the trial court denied both motions.

Progressive then sought to take Ms. Bertrand's deposition. Counsel for Ms. Bertrand opposed Progressive's efforts to depose her, first requiring that Progressive obtain an order compelling her to be deposed and then instructing her not to answer the majority of the questions posed by Progressive in her deposition. By order of court, Progressive successfully deposed Ms. Bertrand, and the parties then filed new cross motions for summary judgment. After hearing the parties' arguments on the motions, the trial court denied Ms. Bertrand's claim for penalties, attorney fees, and costs but granted Progressive's motion to dismiss her claim against it. Ms. Bertrand appealed the judgment.

### ASSIGNMENT OF ERRORS

Ms. Bertrand assigns two errors with the trial court's judgment. First, she argues that the trial court erred in denying her motion for summary judgment, asserting that there are no genuine issues of material fact with regard to the fact

that she provided Progressive a satisfactory proof of loss on March 13, 2013. She next assigns error with the trial court's grant of summary judgment in favor of Progressive, arguing that Progressive failed to prove that March 13, 2013, was not the date it received satisfactory proof of her loss and that its actions in paying her claim were not arbitrary, capricious, or without probable cause.

## DISCUSSION

### Evidentiary Issues

Ms. Bertrand contends the trial court erred in considering evidence that Progressive filed in support of its motion for summary judgment and urges that its grant of summary judgment should be reversed on this basis. She argued in her memorandum opposing Progressive's motion for summary judgment that some of the documentary evidence Progressive attached to its memorandum in support of its motion was defective. She urged that Progressive's list of material facts was defective because it did not reference the specific document supporting each material fact and did not highlight the pertinent portion of each document, as required by La.Dist.Ct.R. 9.10. She further identified a number of alleged errors with the affidavits of Progressive's claims adjuster, asserting that the affidavits do not comply with La.Code Civ.P. art. 967. The majority of the alleged errors is the affiant's failure to attach a sworn or certified copy of a document identified by the adjuster to his affidavit. Ms. Bertrand also argued that portions of the adjuster's affidavits improperly include legal conclusions and hearsay.

Progressive sought to correct the alleged deficiencies with an ex parte motion to substitute revised documents that corrected the alleged errors. The revised documents consisted of its adjuster's affidavits identifying each document referenced in his affidavits by the same reference number used in its memorandum. Ms. Bertrand filed a Motion to Vacate and Strike Progressive's substitution of

3

documents which the trial court granted. She argues that the trial court erred in considering evidence that it struck pursuant to her Motion to Vacate and Strike. Specifically, Ms. Bertrand contends that the trial court erred in granting Progressive's motion for summary judgment because the judgment is based upon: (1) exhibits that do not satisfy the requirements of La.Code Civ.P. art. 966, "and/or (2) assertions of fact in an affidavit that should have been stricken, and/or (3) a defective memorandum." Ms. Bertrand also noted her objections at the hearing on the motion for summary judgment. Nonetheless, the trial court granted judgment in favor of Progressive without addressing her arguments.

Progressive identified each document referenced in its Statement of Uncontested Material Facts and in its adjuster's affidavits in its memorandum supporting its motion for summary judgment as exhibits and attached them to the memorandum.[1] "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4). Subsection (D)(2) of Article 966 states:

> The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.

Affidavits supporting or opposing summary judgment must establish that they are based on the affiants' personal knowledge and set forth such facts as

---

[1] This appeal concerns the parties' second motions for summary judgment, and Progressive had its adjuster execute a supplemental affidavit for its second motion. Both affidavits are attached to its memorandum.

4

would be admissible in evidence. La.Code Civ.P. art. 967. Opinions or conclusions of law do not satisfy the requirements of Article 967.

In *Smith v. Rapides Healthcare System, L.L.C.*, 13-1172, p. 5 (La. App. 3 Cir. 3/5/14), 134 So. 3d 122, 126, *writ denied*, 14-734 (La. 5/23/14), 140 So.3d 728 this court addressed a similar issue and determined that "[d]espite the mandatory language in the codal provisions, the courts of Louisiana have overwhelmingly followed the precedent set in *Buggage [v. Volks Constructors,* 06-175, p. 1 (La. 5/5/06), 928 So.2d 536, 536], by treating [the summary judgment] procedural rules as discretionary." The court also recognized that La.Dist.Ct.R. 1.4 provides trial courts the discretion to deviate from the strict application of the Louisiana District Court Rules.

Though Progressive did not reference the documents attached to its memorandum in the manner provided in the La.Dist.Ct.R. 9.10, it attached the documents as exhibits to the memorandum. As required by La.Code Civ.P. art. 967(A), the adjuster's affidavits are based on his personal knowledge and his personal review of Progressive's business records. Therefore, the affidavits and the documents referenced therein satisfy the requirements of Article 967 and are sufficient to support Progressive's motion. *Ned v. Union Pacific Corp.* 14-1310 (La.App. 3 Cir. 4/15/15), 178 So.3d 1095, *writ denied*, 15-953 (La. 9/18/15), 176 So.3d 146.

As to the adjuster's affidavits containing his opinions and/or conclusions of law, the complained of statements address and explain his actions as an adjuster for requesting the treating physician's office note. An experienced adjuster would be expected to consider issues such as those identified in the alleged legal conclusions when reviewing a claim.

Progressive's memorandum and the exhibits attached to it satisfy the requirements of La.Code of Evid. arts. 966-67, and the trial court did not err in considering them in conjunction with Progressive's motion for summary judgment.

*Summary Judgment*

Appellate courts review the grant or denial of a motion for summary judgment de novo "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*[,] whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, p. 4 (La. 2/26/08), 977 So.2d 880, 882-83; La.Code Civ.P. art. 966(A)(3). The party that files a motion for summary judgment bears the burden of proof on the motion. La.Code Civ.P. art. 966(D)(1). If the moving party will not bear the burden of proof at trial on the issue addressed in the motion and points out that there is an "absence of factual support for one or more elements essential to the adverse party's claim, action, or defense[,]" the non-moving party must then produce evidence showing that a genuine issue of material fact exists "or that the mover is not entitled to judgment as a matter of law." *Id.* If the non-moving party fails to produce such evidence, "there is no genuine issue of material fact[,] and summary judgment will be granted." *Bufkin v. Felipe's La., LLC*, 14-288, p. 3 (La. 10/15/14), 171 So.3d 851, 854.

*Ms. Bertrand's Claim*

Ms. Bertrand seeks to recover statutory penalties and attorney fees from Progressive, asserting that it failed to tender payment for her UM claim within thirty days of receiving satisfactory proof of loss of the claim, as required by La.R.S. 22:1892[2] and 22:1973[3]. In *Thibodeaux v. Arvie*, 17-625, pp. 3-4 (La.App.

_____

[2] Louisiana Revised Statutes 22:1892(A)(1) provides, pertinent part: "All insurers . . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest."

3 Cir. 8/31/17), 226 So.3d 1229, 1232-33, *writ denied,* 17-1666 (La. 10/27/17), 228 So. 3d 1207, this court outlined the three elements that an insured must prove to succeed on a claim against her UM insurer for statutory penalties under La.R.S. 22:1892 and 22:1973: "(1) the insurer received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty . . . days of receipt thereof, and (3) the insurer's failure to pay was arbitrary, capricious or without probable cause." A "satisfactory proof of loss" has been defined as one that "is sufficient to *fully apprise* the insurer of the insured's claim." *McDill,* 475 So.2d at 1089. The insured must show she provided the insurer facts that establish: "(1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages." *Id.*

"Arbitrary, capricious, or without probable cause" has been held to be "synonymous with 'vexatious.'" *Reed v. State Farm Auto. Ins. Co.,* 03-107, pp. 13-14 (La. 10/21/03), 857 So.2d 1012, 1021 (quoting *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1253 (La.1993)). "'Vexatious refusal to pay' means 'unjustified, without reasonable or probable

---

[3] Louisiana Revised Statutes 22:1973 provides, in pertinent part:

      A. An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
      B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:
      . . . .
      (5) Failing to pay the amount of any claim due . . . after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
      C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.

cause or excuse.' Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense." *Id.* (Citation omitted). Whether an insurer's conduct is arbitrary, capricious, or without probable cause "depends on the facts known to the insurer at the time of its action"; penalties are not warranted when the insurer has a "reasonable basis to defend the claim and acts in good-faith reliance on that defense." *La. Bag Co, Inc..v. Audubon Indem.Co*., 08-453, p. 14 (La. 12/2/08), 999 So.2d 1104, 1114. If "a reasonable and legitimate question" exists "as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits." *Reed*, 857 So.2d at 1021. Claims for penalties and attorney fees are penal and must be strictly construed. *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So.2d 184.

Ms. Bertrand contends that she provided a satisfactory proof of loss to Progressive with her March 12, 2013 correspondence. Progressive counters that it did not receive a satisfactory proof of loss until April 8, 2013. At issue is an October 31, 2012 office note prepared by Ms. Bertrand's treating physician, Dr. Clark Gunderson, an orthopedic surgeon. Based on Ms. Bertrand's complaints following the accident and the fact that her complaints were not relieved with conservative treatment, Dr. Gunderson ordered an MRI of Ms. Bertrand's cervical spine. The MRI was performed on October 23, 2013, and Ms. Bertrand returned to Dr. Gunderson on October 31, 2012. Ms. Bertrand listed Dr. Gunderson's note for that visit as being attached to her March 12, 2013 correspondence; however, Progressive's adjuster called Ms. Bertrand's attorney on April 8, 2013, and informed his staff that the note had not been received. At the adjuster's request, the note was forwarded to and received by him that same day. He attested in his

affidavit that he then issued payment of Progressive's $15,000.00 UM policy limits to Ms. Bertrand that same day.

In her opposition to Progressive's motion, Ms. Bertrand stated that Dr. Gunderson's October 31, 2012 note "was believed to have also [been] included" with her demand letter. She did not, however, support her assertion with an affidavit by the person who prepared her March 12, 2013 demand letter for mailing attesting that each document identified in the letter was attached thereto when it was placed in the mail. Ms. Bertrand further argues that Dr. Gunderson's October 31, 2012 office note was not necessary to prove that the March 19, 2012 accident caused her to suffer damages that equaled or exceeded $30,000.00, the sum of Farm Bureau's liability and Progressive's UM policy limits.

Progressive avers that its March 13, 2013 receipt of Ms. Bertrand's demand letter was its first notice of her claim. Ms. Bertrand does not dispute this assertion. Progressive's adjuster's affidavits show that when Progressive requested Dr. Gunderson's office note on April 8, 2013, the only information it had supporting Ms. Bertrand's claim was the following:

1. Documentation associated with the accident for medical expenses totaling $7,499.40;

2. Documentation of medical treatment Ms. Bertrand received after accident, including treatment with her family physician, treatment with a chiropractor, one visit with Dr. Gunderson, and a radiologist's interpretation of the MRI ordered by Dr. Gunderson;

3. Medical records showing that after the accident, Ms. Bertrand complained of headaches, dizziness and low back pain and neck pain radiating to her right shoulder and arm;

4. Dr. Gunderson's records of Ms. Bertrand's first visit to him on October 9, 2012;

5. October 23, 2012 interpretation of Ms. Bertrand's MRI by a radiologist, identifying the presence of a left paracentral disc protrusion at C5-6;

6. Documentation of Farm Bureau's payment to Ms. Bertrand of its $15,000.00 liability limits; and

7. Proof that Ms. Bertrand was not at fault in causing the accident.

Ms. Bertrand claims that Progressive had "no legitimate reason" for requesting Dr. Gunderson's October 31, 2012 note, arguing that "Dr. Gunderson's note merely contained a second opinion of the MRI and provided no additional information regarding [Ms.] Bertrand's injuries or causation." She asserts that the radiologist's interpretation of her MRI was sufficient to meet the requirements of a satisfactory proof of claim. Progressive counters that it wanted her physician's note to confirm that he agreed with the radiologist's interpretation of the MRI and to confirm that he did not relate the herniated cervical disc to a cause other than her March 2012 accident.

Without Dr. Gunderson's note, Progressive had no way of knowing whether he concurred with the radiologist's interpretation of the MRI and whether he believed Ms. Bertrand's injuries were or were not caused by the accident. In his note, Dr. Gunderson confirmed the radiologist's diagnosis and did not question the causation of Ms. Bertrand's cervical herniation. Until Progressive received this note, a reasonable and legitimate question existed as the extent of the injuries Ms. Bertrand suffered as a result of the accident and the value of her UM claim. Progressive did not receive a satisfactory proof of loss of her claim until April 8, 2013.

On Friday, April 19, 2013, Ms. Bertrand notified Progressive that she had not received payment of her UM policy limits. On April 23, 2013, Progressive re-issued payment and notified Ms. Bertrand's counsel that it had done so. On April 29, 2013, Ms. Bertrand's counsel informed Progressive that because of the notation on the check that it was full and final payment and the instruction that she sign the

settlement agreement, the check was not an unconditional tender as required by *McDill*, 475 So.2d 1085. Progressive's adjuster notified counsel by letter dated April 30, 2013, "that he should deem the draft an unconditional tender and negotiate the check." The adjuster identified this letter in his affidavit, and Progressive attached a copy of the letter to its memorandum. Progressive contends that the tender was unconditional at that time.

Ms. Bertrand did not list the adjuster's statement regarding the April 30, 2013 letter in her List of Material Facts that are Genuinely Disputed which she attached to her opposition to Progressive's motion, address it in her memorandum opposing Progressive's motion, or submit an affidavit denying the statement. Accordingly, we find that Progressive made an unconditional tender of its $15,000.00 UM policy limits to Ms. Bertrand on April 30, 2013, which was less than thirty days after its April 8, 2013 receipt of her satisfactory proof of loss.

Even if we were to conclude that Ms. Bertrand's demand letter provided Progressive satisfactory proof of loss regarding her claim on March 13, 2013. Progressive's actions do not rise to the level of arbitrary, capricious or without probable cause required for the imposition of penalties and attorney fees. Progressive issued payment to Ms. Bertrand of its $15,000.00 UM policy limits on April 8, 2013, but for unknown reasons, she did not receive that payment. Upon being notified of this fact, Progressive re-issued payment. Although the check bore restrictive endorsement language and was accompanied by a release agreement prepared for Ms. Bertrand's signature, Progressive quickly notified Ms. Bertrand's counsel that negotiation of the check was not restricted and that completion of the agreement was not required.

Based on the record, Ms. Bertrand has not carried her burden of proof on her claim for statutory penalties and attorney fees and has not shown that a genuine issue of material fact exists which precludes judgment in favor of Progressive.

*Prescription*

On August 29, 2018, Progressive filed an exception of prescription in this court. Our decision on the merits of the parties' motions for summary judgment pretermits the necessity to address the exception.

## DISPOSITION

For the reasons discussed herein, the judgment of the trial court dismissing Amanda Bertrand's claims against Progressive Security Insurance Company is affirmed. All costs of this appeal are assessed to Amanda Bertrand.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.